**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CRYSTAL COATES**<br>***Plaintiff,*** | §<br>§<br>§ | |
| **V.** | § | **CAUSE NUMBER: 5:22-CV-00315** |
| | §<br>§ | |
| **TRICON PRECAST, LTD,**<br>***Defendant.*** | §<br>§ | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE COURT:

**COMES NOW CRYSTAL COATES** , hereinafter referred to by name or as Plaintiff, complaining of and about **TRICON PRECAST, LTD** hereinafter referred to by name or as Defendant or Tricon.

**I.**
**NATURE OF SUIT**

**1.01** This is a lawsuit for gender (female) discrimination and retaliation by managers, employees, agents and others at Crystal Coates' place of employment Tricon Precast, Ltd. This suit is authorized by Title VII of 42 U.S.C. §2000e *et seq. and Chapter 21* Texas Labor Code.

## II.
## PARTIES AND SERVICE

**2.01** Plaintiff, Crystal Coates, is an individual residing in San Antonio, Bexar County, Texas.

**2.02** Defendant, Tricon Precast, Ltd. is a domestic limited partnership authorized to conduct business in the state of Texas. Said Defendant may be served with process by serving its Registered Agent as follows:

> **Tricon Precast, Ltd.**
> c/o CSC-Lawyers Incorporating Service Company
> **Registered Agent:**
> Corporate Service Company
> 211 East 7th Street, Suite 620
> Austin, Texas 78701

Plaintiff requests that service upon said Defendant be accomplished by certified mail, return receipt requested, or by private process server.

## III.
## CAUSE OF ACTION

**3.01** This is a gender discrimination complaint including retaliation brought against Tricon Precast, Ltd. pursuant to Title 42 U.S.C. §2000e and Texas Labor Code §§21.051, 21.055 and 21.056.

**3.02** Jurisdiction and venue are proper in San Antonio, Bexar County, Texas because all material acts or omissions complained about occurred in this city, county and state as well as within the United States District Court, Western District of Texas, San Antonio Division. Plaintiff seeks injunctive and other

equitable relief including backpay and forward pay as well as compensatory damages and non-compensatory damages, attorney fees and costs of court.

## IV.
## FACTUAL AND PROCEDURAL BACKGROUND

**4.01** Crystal Coates was employed by Tricon Precast, Ltd. in February 2017 as an inventory clerk. In this capacity she reported to Elvia Chavez, Office Manager. Her second level supervisor was Jamie Garcia, Plant Manager followed by Oscar Hernandez, Sr. Plant Manager and successor Plant Manager was Cesar Rodriguez.

**4.02** Crystal Coates is a female African American who was subjected to a hostile work environment while employed at Tricon Precast, Ltd. in San Antonio, Texas. Crystal Coates was sexually harassed, retaliated against for asserting her rights and terminated due to unlawful discrimination and retaliation by the respondent employer.

**4.03** An examination of the company's alleged nondiscriminatory reasons for the egregious hostility of her work environment and for her termination are not credible and are, in fact, mere pretext calculated to mask unlawful discrimination and retaliation. In the alternative, this is a mixed motive case and some of the alleged business reasons may be accurate to some extent but are not the sole proximate reasons for the sexual harassment, discrimination, and/or retaliation against Ms. Coates. Discrimination played a significant or substantial role in the hostile work environment she was subjected to ending with her termination.

## A. PRIMA FACIA CASE ELEMENTS

**(1)** The complainant Crystal Coates belongs to a protected group; (e.g. female; African decent; opposed discrimination in the workplace).

**(2)** Ms. Coates was subjected to unwelcome sexual harassment including gender slurs such as "***bitch***," "***girly***," "***sancha***" or conduct such as being slapped on her buttocks. The workplace environment was so polluted that male co-workers drew a male penis on her vehicle and would urinate outdoors in close proximity to her and other female co-workers.

**(3)** The harassment was based on Ms. Coates sex (female); for example she was repeatedly told by a supervisor that he would "***pay all her bills***" in return for sex, and that he wanted her to have a "***Black baby***" for him. A lower level employee who was presumably emulating the supervisors and managers also slapped Crystal Coates on the buttocks.

**(4)** The harassment affected a term, condition or privilege of Ms. Coates' employment. *Stewart v. Miss Trans Comm'n.,* 586 F3d 221, 330 (5th Cir 2009). Ms. Coates was subjected to an abusive work environment and was terminated upon submitting a written complaint that had been requested by her supervisor or manager to document her allegations.

**4.04** During Ms. Coates employment at Tricon Precast, Ltd. she worked hard and rose to the level of inventory supervisor. She held this position until the day she was terminated on January 23, 2019. This was ***one day after*** she presented a five (5) page signed and dated complaint to Cesar Rodriguez, Plant Manager and Elvia Chavez, Office Manager. Ms. Coates was told by Cesar Rodriguez and Ms. Chavez that they would send her complaint to Jorge Yanez, Human Resources Officer, in the Houston office of Tricon Precast, Ltd. Yanez reportedly ordered her termination upon receiving the complaint.

**4.05** During her employment with Tricon Precast, Inc. Crystal Coates endured frequent sexual comments, sexual slurs, and even sexual graffiti on her personal truck. Chris Harrell, Lead Mechanic, ***drew an offensive male penis*** on the tailgate portion of plaintiff's truck. Also, while employed she was subjected to unwelcome touching, sexual invitations to go out, and requests for sexual favors in return for money and the like.

**4.06** Ms. Coates never encouraged anyone to treat her in this way, and she objected each and every time this happened. She made it clear that this type of conduct towards her was unwelcome. Ms. Coates rejected all offers of sex and made it clear that those sexual comments and offensive sexual behaviors were unwelcome and that they had to stop.

**4.07** She endured this treatment from managers such as Oscar Hernandez, Sr., Plant Manager and other male supervisors and employees from at least March 27, 2018 until the date of her termination. Moreover, the fact that the Plant Manager Oscar Hernandez, Sr. treated her this way in front of supervisors and co-workers, in spite of her clear objections, communicated to other male employees that this was acceptable behavior at Tricon Precast, Ltd. in San Antonio, Texas.

**4.08** Ms. Coates repeatedly complained about this unlawful treatment and abusive work environment to the Human Resources Officer, Jorge Yanez and Office Manager, Elvia Chavez and to other management officials but they rarely if ever, did anything to correct these type of actions by those employees. In fact they appeared incapable of correcting these unlawful behaviors because it was engaged in and condoned by upper management, and therefore emulated by supervisors, co-workers and others.

**4.09** After, Ms. Coates started reporting her complaints by email she started noticing that her time and attendance records were altered to her detriment. Specifically, the time cards started reducing her earned hours, sick leave and paid time off hours. Ms. Coates was subjected to this retaliatory treatment as a result of Ms. Coates informal complaints to Elvia Chavez and Cesar Rodriguez (who became the successor Plant Manager after Oscar Hernandez, Sr. was reportedly demoted to Operations Manager).

**4.10** During Crystal Coates employment at Tricon Precast, Ltd. she witnessed sexual discrimination and retaliation against other similarly situated women. She observed that after other female employees reported sexual harassment they were ignored, threatened, transferred, forced out or terminated.

**4.11** Another black female employee reported that she was being threatened via texts or emails and was subjected to gender slurs on nearly a daily basis from about April of 2018 through at least April of 2020. She also complained about her male co-workers urinating on the job premises in public where female employees would have to see them doing this. Crystal Coates also observed this and one employee made a video clip of co-worker Ariel Martin urinating in public on company premises in a brazen manner calculated to be seen by female employees.

**4.12** Throughout her employment Sheila Franklin like Crystal Coates had to endure ***"cat calling"*** and ***"wolf whistling"*** at Tricon Precast, Ltd. She was also not provided a restroom ("port-a-potty"). When Crystal Coates realized Ms. Franklin did not have a separate restroom, Ms. Coates requested a "port-a-potty" for Sheila Franklin. Shortly after the port-a-potty arrived the male co-workers began tampering with the restroom so that she would be unable to use it. Sheila Franklin's male co-workers broke the latch so it would not lock so that anyone could walk in on her while she was using the facility.

**4.13** Sheila Franklin, Crystal Coates and others often worked very early hours such as 2:30 a.m. when it was pitch black outside. She often had to go to different areas of the yard or to other buildings on the premises when it was very dark outside. After one of Sheila Franklin's complaints she was told by co-workers, "if anything ever happened to you [out here] no one would ever know it" which she believes was intended as and which she took as a threat. She was told this by Robert (LNU) and also by "Derry" or Derek (LNU)[1] and Kyree Scott.

**4.14** When Crystal Coates would complain about this outrageous behavior by the male co-workers and their supervisors and managers she was told by the Office Manager Elvia Chavez that ***"they are the untouchable beasts."*** That is, that there was nothing she (Crystal Coates, Sheila Franklin or Elvia Chavez) could do about it because it was sanctioned by the supervisors and managers and would be ignored by management.

**4.15** Sheila Franklin was an OSHA[2] certified fork lift operator; nonetheless, she was rarely permitted to operate a fork lift. On the other hand "they would let every guy that walked into the place, off the street, become a fork lift operator" which earned them more money. These were new male hires that had no proof they could operate a forklift and no proof of actual training much less certifications. Sheila Franklin also reported that she saw male employees doing

---

[1] LNU refers to last name unknown.

[2] OSHA refers to Occupational Safety and Health Administration.

drugs in the back of the property.

**4.16** Sheila Franklin believes that there was a definite effort to isolate her and to make her fear for her own safety. She saw some co-workers "***jerk off***" or masturbate in front of her or where she could not avoid seeing them. Ms. Franklin described Tricon Precast, Ltd. as a "horrible place to work."

**4.17** Oscar Hernandez, Sr. the Plant Manager and later Operations Manager repeatedly asked Crystal Coates to be his "***sancha***" [Spanish for girlfriend or mistress]. Crystal repeatedly told him that she objected to that kind of language in the workplace and for him to stop saying these things to her but her objections seemed to fuel the fire.

**4.18** "Herbert" Humberto Maravilla, Assistant Supervisor and mechanic, sent Crystal frequent messages through Facebook (kissing emojis), Crystal blocked him from her Facebook. Herbert Maravilla told Andy Garza and Crystal he wanted a "***black baby** by Crystal*" or words to this effect.

**4.19** Ariel Garcia Martin a Supervisor with Tricon, ***urinated in public*** on a company rock while being videotaped. This was also reported to management to no avail. This is the same person who told Crystal "***he liked chocolate***" in a loud lascivious manner and who also threatened and harassed other employees at Tricon Precast, Ltd.

**4.20** Yoislandy Fonseca (male Supervisor) repeatedly stated to Crystal Coates "***I***

***like chocolate***" after Ariel Martin had started saying this to Crystal Coates *circa* November 2018 and thereafter until Crystal Coates' termination.

**4.21** Michael Dorn was Crystal Coates' initial supervisor at Tricon Precast, Inc. Crystal reported to him that one of the male temporary employees had hit her behind (buttocks). Dorn seemed amused by this but did nothing about it. Crystal asked Dorn to report this behavior to upper management but he told her "no, they are my homies." Crystal Coates then reported the misconduct at a meeting and was told by Michael Dorn "you should not have done that," "you do not know what you are up against." Michael Dorn also was known to have sexually harassed female employees.

**4.22** Ms. Coates was discriminated against based on her sex (female) and retaliated against (for opposing discrimination in their workplace) in violation of Title VII of the Civil Rights Act of 1964, as amended.

## V.
## DAMAGES

**5.01** Crystal Coates was subjected to a hostile work environment for a sustained period of time in spite of her objections based not only on her sex retaliated against because she objected to and reported the discrimination by her co-workers and managers to the Human Resources Office in San Antonio and Houston, Texas.

**5.02** Ms. Coates contends her termination was part of this retaliatory conduct. Crystal Coates respectfully requests that this Court find that her employer Tricon Precast, Ltd. through its employees, supervisors and managers sexually harassed and retaliated against Plaintiff.

**5.03** As a result Ms. Coates has suffered compensatory damages, non-compensatory damages and therefore; also seeks injunctive and other equitable relief including backpay, forward pay, and punitive damages as provided by law.

## VI.
## ADMINISTRATIVE PROCEEDINGS

**6.01** Crystal Coates timely contacted the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission - Civil Rights Division (TWC-CRD) to report the discriminatory treatment, retaliation and her termination by Tricon Precast, Ltd through its managers, supervisors, employees, agents, and others.

**6.02** Ms. Coates filed her formal complaint of discrimination on or about March 19, 2019, contending discrimination on account of her gender (female), retaliation and hostile work environment. The charge was thereafter prepared by EEOC/TWC-CRD, signed by Plaintiff and assigned charge number 451-2019-01680 and sent to the Respondent company. ***See*** **Exhibit 1** (Notice of Charge of Discrimination) and ***See*** **Exhibit 2** (Notification and Acknowledgement

of Dual-Filed Charge).

**6.03** After an intensive investigation, including on-site investigations, the EEOC found sufficient evidence to believe that she had in fact been discriminated against and issued a Determination Letter setting forth the Commission's findings. The EEOC issued the following determination on the merits:

> "Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. 2000e, et seq., and timeliness and all other requirements for coverage have been met."
>
> "Charging Party alleges she was discriminated because of her sex (female) in that she was subjected to a sexually hostile work environment, in violation of Title VII. Specifically, Charging Party alleges that over the course of her employment, she was subjected to unwelcome touching, frequent sexual and sexually suggestive comments by co-workers, supervisors and managers, and invitations for sexual favors. Charging Party rejected all of the offers for sex and made it clear that the sexual comments and offensive sexual behavior were unwelcome."
>
> "Charging Party complained about the unlawful discrimination to Respondent's managers and its Human Resources personnel, but her complaints were not taken seriously. After complaining of the sexual harassment, she noticed that her timecards started to reflect inaccurate shortages of her accrued sick leave and PTO hours."
>
> "On January 22, 2019, Charging Party presented a five-page sexual harassment complaint to Jorge Yanez, Human Resources Officer, and the following day she was fired, which she alleges is in retaliation for having made the sexual harassment complaint."

"Respondent denies Charging Party was discriminated against because of her sex and/or was subjected to unlawful retaliation, and contends it took immediate, corrective action any time a complaint was made, including any complaint made by the Charging Party. Respondent asserts it immediately addressed Charging Party's complaint about her PTO days off, or sick pay. To demonstrate its immediate and corrective action, Respondent cited its response to Charging Party's complaint that a Lead Mechanic had drawn offensive graffiti on the windshield of her personal vehicle. According to Respondent, the complaint was promptly investigated and once the offender was identified, the employee was immediately counseled and suspended. Respondent contends it only terminated the Charging Party on January 23, 2019, after receiving various complaints from field supervisors indicating that Charging Party had been approaching its employees demanding that the employees turn in all complaints they might have about the company or its management directly to her and not to the Human Resources department."

"Examination of the evidence revealed that Charging Party was subjected to sexually harassing conduct based on her sex. Although it appears that Respondent took action in some instances to address complaints made, its efforts overall to eliminate the conduct in question were insufficient to correct and maintain a work environment free of the unwelcome harassing conduct. In this regard, Respondent's Anti-Harassment Policy and Complaint procedures were ineffectively implemented. The evidence further indicates that the unwelcome sexual conduct to which the Charging Party was subjected was sufficiently severe or pervasive to alter her working conditions and create a hostile work environment, and as such, be actionable under Title VII."

"Regarding Charging Party's allegation she was

> discharged for complaining of the sexual harassment, the evidence shows that after lodging verbal complaints for a period of time, Charging Party submitted a written complaint outlining the sexually harassing conduct to which she was being subjected on January 22, 2019, and Respondent terminated her the following day. Respondent's contention notwithstanding that it terminated Charging Party for a legitimate, non-discriminatory reason, for soliciting written witness statements directly from employees regarding how they were being treated by Respondent, the evidence reflects that it is more likely than not that Charging Party's complaint of sexual harassment was the motivating factor in the decision to terminate her."
>
> "As such, I find that Respondent violated Title VII of the Civil Rights Act of 1964, as amended, when it subjected Charging Party to a sexually hostile work environment. I also find that Respondent violated Title VII of the Civil Rights Act of 1964, as amended, when it discharged Charging Party for making a protected complaint of sexual harassment, in violation of Title VII. "

***See*** **Exhibit 3** (EEOC Determination Letter dated April 6, 2021).

**6.04** After making its determination in favor of Crystal Coates the Commission tried its best to bring the parties together to conciliate this matter in an effort to resolve the complaint. The Respondent Tricon Precast, Ltd. failed, refused, or neglected to participate in the process in any meaningful way whatsoever.

**6.05** On or about February 1, 2022 the EEOC found that the conciliation had failed due to the employers' unresponsiveness. ***See*** **Exhibit 4** (Conciliation Failure). A Notice of Right to File Suit was thereafter issued by the EEOC on

February 1, 2022. ***See* Exhibit 5** (Notice of Right to Sue). Accordingly, Plaintiff's claims are in all respects timely.

## VII.
## ATTORNEY FEES

**7.01** Pursuant to 42 U.S.C. §2000e and the Texas Labor Code § 21.259, Plaintiff is entitled to recover attorney fees, expenses and court costs. Hence, Plaintiff further prays for all costs and attorney fees associated with bringing the present case to trial in the amount of at least $150,000.00 billed at the customary rate of $450.00 per hour for legal services in federal district court.

**7.02** In the event an appeal to the United States Court of Appeals is needed Plaintiff seeks at least $150,000.00 or more since federal appellate services are customarily billed at a higher rate, plus cost of the transcript and other costs of court.

**7.03** If an appeal to the Supreme Court of the United States is required Plaintiff will incur and therefore seeks at least an additional $150,000.00 plus costs. The customary rate for legal services in the Supreme Court are at least $750.00 per hour depending on the qualifications of counsel.

## VIII.
## REQUEST FOR JURY TRIAL

**8.01** Plaintiff hereby makes her demand for a jury trial and acknowledges the payment on this date of the required jury fee.

## IX.
## PRAYER

WHEREFORE, premises considered Plaintiff Crystal Coates requests that Tricon Precast, Ltd be summoned to appear and answer this suit. After a hearing or trial on the merits, plaintiff prays for all relief to which she may be entitled at law or in equity, including compensatory and non-compensatory damages, back pay, forward pay, punitive damages, attorney fees, expert fees, and costs of court.

Respectfully submitted,

**EDWARD L. PIÑA**
Attorney at Law
State Bar No. 16011352
**Edward L. Piña & Associates, P.C.**
***The Ariel House***
8118 Datapoint Drive
San Antonio, Texas 78229-3268
Telephone: (210) 614-6400
Facsimile: (210) 614-6403
Email: epina@arielhouse.com
**ATTORNEYS FOR PLAINTIFF**